**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| QUENTIN SALMOND, | |
| Appellant | No. 2247 EDA 2014 |

Appeal from the Judgment of Sentence July 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009615-2012

BEFORE:  BOWES, PANELLA, AND FITZGERALD, *JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 30, 2015**

Quentin Salmond appeals from the aggregate judgment of sentence of twenty-five to fifty years incarceration imposed by the trial court after a jury found him guilty of third-degree murder and conspiracy to commit murder. We affirm.

The trial court delineated the salient facts as follows.

On April 12, 2008, at about 12:30 p.m., Joan Hill was working at an insurance office located at 5637 Chew Avenue when she saw a blue Lincoln town car park with the engine running on Woodlawn Avenue. A man, later identified as defendant Salmond, dressed in women's Muslim clothing exited the vehicle. Hill believed the man was going to rob Skyline Restaurant, located around the corner, so she called 9-1-1 and gave the license plate number of the vehicle.

At around noon that day, Kerron Denmark and Kenneth Wiggins went to Skyline Restaurant and Wiggins ordered food. Immediately after they left the restaurant with Wiggins carrying

_____
* Former Justice specially assigned to the Superior Court.

his food, a man approached them asking for marijuana. As Denmark and Wiggins were walking down the street someone yelled "don't f'ing move." Denmark heard gunshots and ran away.

On April 12, 2008, at 12:44 p.m., while on routine patrol, Police Officer Christopher Mulderrig was flagged down by a man on the street and told there had been a shooting about two blocks away. When Officer Mulderrig arrived at 5643 Chew Avenue, he observed a male, later identified as Wiggins, lying in the street with a gunshot wound to the chest. Wiggins subsequently died from this gunshot to his chest.

After the murder, Detective Thorsten Lucke recovered surveillance video from Skyline Restaurant. The surveillance video showed Wiggins and Kerron Denmark enter Skyline Restaurant. While the men are inside the restaurant, a vehicle drives by on Chew Avenue and turns left at the corner. Defendant [Jamil] Banks and defendant Salmond, wearing women's Muslim clothing, emerge from the area where the car had turned from Chew Avenue. The defendants walk towards Skyline Restaurant. Defendant Salmond stops in an alley while defendant Banks enters the restaurant. Defendant Banks buys a bottle of soda, leaves the restaurant, and stands with defendant Salmond in the alley, out of sight of the camera. After Wiggins gets his food, he and Denmark leave the restaurant and walk down the street. Defendant Banks follows closely behind Wiggins and Denmark while defendant Salmond follows farther back. The defendants confront Wiggins and Denmark and Wiggins falls to the ground. Quickly thereafter everyone runs away.

Police Officer Joanne Gain of the Crime Scene Unit recovered two .22 caliber fired cartridge casings, a Nike Air Jordan sneaker, and a Mountain Dew bottle from the murder scene. Officer Gain tested the Mountain Dew bottle for finger prints and DNA. According to Police Officer John Cannon, an expert in firearms identification, these two .22 caliber fired cartridge casings were fired from the same unrecovered firearm. The bullet recovered from the decedent[']s body and the fired cartridge casings were not fired from the same firearm.

On April 14, 2008, at about 9:00 p.m., an unlicensed blue Lincoln town car was found on fire in the area of Tenth Street

- 2 -

and Chew Avenue. Lieutenant Rodney Wright of the Philadelphia Fire Department determined that the vehicle was burned intentionally.

On April 15, 2008, Charles Hayward gave a statement to police. Hayward explained that in February he had sold the blue Lincoln town car that Hill had called in to 9-1-1 to Bernard Salmond, defendant Salmond's brother. According to Hayward, about a week previously, Wiggins had robbed defendant Salmond after they had been gambling.

On April 17, 2008, Richard Hack, a friend of Wiggins, gave a statement to police. Hack explained that two days before the murder, defendant Salmond, Wiggins, and himself were gambling. Defendant Salmond and Wiggins argued about a gambling debt and then Wiggins choked defendant Salmond and took $1000 from him. For the next couple of nights, defendant Salmond and his friends were in the area looking for Wiggins.

On January 13, 2010, Robert Bluefort told police that about three weeks after the murder, defendant Salmond confessed to him that he shot Wiggins. According to defendant Salmond he had to shoot or be shot. Bernard Salmond told Bluefort that the police had questioned Hayward because the car that was used in the murder was in his name. Bluefort and Bernard Salmond then discussed burning the vehicle. Bernard Salmond stayed with Bluefort for about a month after the murder.

Trial Court Opinion, 10/3/14, at 2-4.

The Commonwealth charged Appellant with homicide, conspiracy to commit murder, person not to possess a firearm, carrying an unlicensed firearm, carrying a firearm in public in Philadelphia, possession of an instrument of crime ("PIC"), arson, and hindering apprehension. The latter two charges were dismissed after a preliminary hearing. The court severed Appellant's trial from that of his brother, but Appellant proceeded to trial

with co-defendant Banks.  The jury found Appellant guilty of third-degree murder and conspiracy.  It acquitted him of carrying an unlicensed firearm and PIC.  The court sentenced Appellant on July 28, 2014, to twenty to forty years incarceration for the third-degree murder count and a consecutive term of five to ten years imprisonment for the conspiracy charge.  This timely appeal ensued.  The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) decision. The matter is now ready for our review.  Appellant presents three issues for this Court's consideration.

> I.    Did the trial court err by permitting the Commonwealth to elicit irrelevant other crimes evidence not admissible pursuant to Pennsylvania Rule of Evidence 404(b) and more prejudicial than probative under Pennsylvania Rule of Evidence 404. . .and in violation of Appellant's right to due process guaranteed by the United States and Pennsylvania Constitutions?
>
> II.   In this identification case, did the trial court err by denying Appellant the right to elicit evidence of other suspects with motives to murder decedent Wiggins?
>
> III.  Did the trial court err when it denied [sic] permitted the Commonwealth Attorney to mischaracterize evidence in his closing argument to the jury, such that it was unable to fairly weight [sic] the evidence against Appellant?

Appellant's brief at 5.

Appellant's initial claim is that the trial court erred in allowing the introduction of evidence that Appellant's brother and Robert Bluefort burned

- 4 -

the vehicle used in the killing. Appellant contradictorily claims both that he was not involved in the arson and that the evidence was improper prior bad acts evidence introduced to show his propensity to commit crime. It is evident that Appellant's actual claim hinges on the relevancy of the arson. *See* Appellant's brief at 14 ("[T]he prejudicial taint of this irrelevant evidence against Appellant could not be overcome.").

Although Appellant cites a litany of federal case law discussing prior bad acts of the accused, he fails to account for the fact that the evidence was neither his own alleged bad act nor introduced to show his criminal propensity. Rule 404(b) prohibits evidence of other crimes, wrongs, or other acts committed by that person to show the individual acted in accordance with that same character in the underlying case. It does not speak to evidence of bad acts committed by others. In the latter situation, such evidence is generally not admissible because it is irrelevant.

The Commonwealth contends that the evidence was properly introduced to rebut Appellant's own cross-examination and position that Robert Bluefort's statements to police regarding the crime in question were not credible. In addition, it highlights that Appellant did not level this specific issue in his Rule 1925(b) statement and that the trial court therefore did not address his claim raised on appeal. In this respect, Appellant alleged in his Rule 1925(b) statement that, "The trial court erred in permitting the Commonwealth to elicit direct or implied evidence of irrelevant and

- 5 -

inadmissible other crimes evidence, including uncorroborated threats to witnesses and their families, as evidence of prior bad acts not otherwise admissible as an exception delineated in Pennsylvania Rule of Evidence 404(b)." Appellant's Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, at 1.

We agree with the Commonwealth that Appellant's claim on appeal is waived. It is evident that he did not contest the trial court's allowance of evidence of the arson in his 1925(b) statement. *See id*. In an attempt to shoehorn his appellate issue into the claim advanced below, he has attempted to assert that the arson evidence was evidence of a prior bad act. Nonetheless, as noted, this evidence was not offered as evidence of his own bad act.

Moreover, the evidence was relevant in this case because Appellant attempted to discredit Mr. Bluefort's earlier statements to police. Specifically, defense counsel questioned Detective Nathan Williams, who had interviewed Mr. Bluefort prior to trial. Before trial, Mr. Bluefort had set forth that Appellant confessed to shooting the victim, but recanted this statement at trial. In questioning Detective Williams, defense counsel asked if the detective knew that Mr. Bluefort was a liar. The detective responded, "No. His information was corroborated." N.T., 3/10/14, at 227. Defense counsel then highlighted Mr. Bluefort's extensive criminal history, including convictions for fraud and identity theft. Detective Williams acknowledged

that he knew Mr. Bluefort was incarcerated at the time he questioned him, but again reiterated, "the information he provided was corroborated prior to my interview, prior to my contact with him." *Id*.

Defense counsel continued, and initiated the discussion about the car arson. She stated, "You say 'corroborated.' There was nothing about Quentin Salmond mentioned with having to do with that car; is that right?" *Id*. at 229. The detective stated that the link existed between Appellant and his brother. The prosecutor on redirect then asked about the corroboration and Detective Williams answered, "Mr. Bluefort actually confirmed information that I had previously received. In December of 2009, I received information that that Lincoln had been torched, and January 2010, when I spoke to Mr. Bluefort, he was giving me great detail about the torching of that Lincoln." N.T., 3/11/14, at 12-13. Thus, the Commonwealth elicited the information in direct response to defense counsel's attempt to discredit Mr. Bluefort. The Commonwealth was permitted to show that Mr. Bluefort had provided other accurate information to demonstrate that Mr. Bluefort's statement regarding Appellant confessing was not false. Appellant's initial claim, aside from being waived, is without merit.

The second issue Appellant levels on appeal is that the trial court erred in precluding him from introducing evidence that other suspects had a motive to kill the victim. Although not contained in his Rule 1925(b) statement below, almost the entirety of Appellant's argument is premised on

a due process position. In this respect, Appellant points out that a defendant has a due process right to introduce evidence that the crime was committed by another individual.

Appellant cites to fifteen separate pages of notes of testimony and a trial exhibit in support of his claim, but does not specify in what manner the trial court actually precluded him from introducing relevant evidence of other individuals' motives. The trial court, in its Rule 1925(b) opinion, noted that Appellant "does not provide this Court with specifics as to what evidence was precluded or how the defendant was limited." Trial Court Opinion, 10/3/14, at 8. It nonetheless speculated that Appellant was challenging its ruling on questions asked of Detective Williams. The court maintained that it permitted Appellant to question the detective about his investigation of other suspects and other witnesses regarding individuals who had disputes with the victim. However, it acknowledged sustaining objections based on hearsay or where it found the evidence irrelevant.

The Commonwealth contends that Appellant's claim is so vague and undeveloped as to be waived. It highlights that Appellant was warned of this deficiency by the trial court, but he failed to crystalize his position on appeal. The Commonwealth adds that the trial court permitted defense counsel to question two of the victim's friends, Richard Hack and Kerron Denmark, about other individuals who might have been angry with the victim. Further, it avers that defense counsel questioned Detective Williams

extensively about his investigation, including looking into additional suspects.

Initially, we note that Appellant's constitutional arguments are waived because he did not raise them in his Rule 1925(b) statement. *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998). Additionally, we agree that his claim below was vague and precluded the trial court from meaningfully addressing the issue. *Commonwealth v. Reeves*, 907 A.2d 1 (Pa.Super. 2006). Indeed, the trial court only addressed a portion of the transcripts that Appellant now alleges support his position. Therefore, his position is waived on that ground as well. Moreover, Appellant's brief, though citing to pages of the trial transcript, fails to articulate what rulings by the trial court that he is contesting. Since Appellant's briefing is deficient in this regard, his claim is waived. *See Commonwealth v. Hardy*, 918 A.2d 766 (Pa.Super. 2007).

Appellant's final position is that the trial court erred in permitting the prosecutor to argue during his closing statement that the burned Lincoln was circumstantial evidence that Appellant was involved in the killing. Appellant asserts that the trial court had given a specific jury instruction regarding the arson evidence and that it informed the jury that the arson was admissible to corroborate the police investigation but not as evidence of Appellant's participation in the homicide.

The Commonwealth rejoins that the prosecutor did not argue that the arson was evidence of Appellant's guilt. Instead, it posits that the prosecutor, in responding to defense counsel's summation that Mr. Bluefort lied about Appellant's confession, reiterated Detective Williams' investigation and confirmed that Mr. Bluefort's story regarding the burning of the car had been corroborated. We find Appellant's position disingenuous.

We have reviewed the notes of testimony cited by Appellant in support of his claim that the prosecutor allegedly told the jury that the arson was evidence of Appellant's involvement in the murder. It does not support Appellant's argument. In discussing Mr. Bluefort's statement to police, the prosecutor stated,

> The contents of the statement of which Detective Williams of the Homicide Unit took, [Bluefort] was more suspect of because a man in Bluefort's postion will do anything to help himself. So what did he do? He listened and he said, well, how would you know about the burning of the car if it weren't true, if you didn't hear it from the people's mouths that actually did that because he didn't tell anybody about that. He just found out that the car was torched a month before he took the statement and Bluefort is running at the mouth about what? Them torching the car.

N.T., 3/11/14, at 175.

Since the prosecutor did not contend that evidence of the arson showed Appellant's guilt, but instead was arguing that the arson confirmed a portion of Mr. Bluefort's statement to police, and therefore Mr. Bluefort was not lying about Appellant's confession, Appellant is entitled to no relief.

- 10 -

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2015