COMMONWEALTH of Pennsylvania, Appellee

v.

Kenneth M. HARDY, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Nov. 15, 2006.

Filed Feb. 23, 2007.

---

Ralph A. Germak, McAlisterville, for appellant.

Stephen S. Snook, Asst. Dist. Atty., for Com., appellee.

BEFORE: TODD, BENDER and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is a direct appeal from judgment of sentence. We have rephrased and reordered Appellant's issues as follows: (1) whether there was sufficient evidence to prove malice as required for third degree murder; (2) whether the murder verdict was against the weight of the evidence; (3) whether trial counsel was ineffective for failing to object to numerous questions and/or comments by the Commonwealth; (4) whether numerous questions and/or comments by the Commonwealth constituted prosecutorial misconduct; (5) whether the trial court improperly admitted a variety of evidence; and (6) whether the sentencing court abused its discretion. Declining to address Appellant's ineffectiveness claims and finding his other issues to be waived and/or without merit, we affirm the judgment of sentence.

### Facts

¶ 2 Appellant, his infant son (Victim), Appellant's girlfriend (who was not Victim's mother), and the girlfriend's own children slept at the same home on the night of February 21, 2003. Victim did not sleep well and, according to Appellant, cried and "fussed" all night.

¶ 3 The next morning, Appellant's girlfriend departed their mutual residence, leaving Appellant and Victim as the only persons therein. When the girlfriend departed, Victim appeared to be unharmed. For roughly the next two hours, Victim was in Appellant's exclusive custody and care. At the end of that time, Appellant took Victim to a hospital because it appeared that Victim was dying. Medical personnel determined that, along with rib fractures, Victim had a swollen, bleeding brain. Some two days later, Victim died from his injuries.

¶ 4 Expert medical testimony established that Victim sustained his fatal injuries when he was under Appellant's exclusive control. One expert testified that an immense amount of force was applied to Victim's head in a very short duration, damaging the brain and causing it to bleed. While the expert could not say that Victim was shaken, he did testify that the probability was high that Victim was grabbed and slammed against something.

¶ 5 A second expert testified that Victim was shaken violently and that, in the course of being shaken, his head struck an object, thus causing his brain to swell and bleed. He indicated that the injuries revealed a case of Shaken Baby Syndrome or Shaken Impact Syndrome. The expert also testified that Victim suffered a rib fracture from being squeezed violently during the shaking episode.

¶ 6 Appellant contended that he was sleeping on a couch with Victim and that Victim fell from the couch into a nearby, padded bassinet or onto the floor. The medical evidence showed that Victim's injuries could not have occurred from the fall which Appellant described.

¶ 7 The Commonwealth charged Appellant with homicide and endangering the welfare of a child (EWOC). He proceeded to a jury trial and was convicted of both counts, with the homicide conviction being third degree murder.

¶ 8 The court sentenced Appellant to incarceration of not less than 18 or more than 40 years for murder and imposed no penalty for EWOC. Trial counsel filed a post-sentence motion and then withdrew from representation. The court appointed

---

* Retired Senior Judge assigned to the Superior Court.

new counsel who filed additional post-sentence motions. After a hearing, the court denied post-sentence relief. This appeal followed the judgment of sentence.

### Briefing Requirements

¶ 9 Normally, issues not preserved in the trial court are waived and cannot be considered on direct appeal. Pa.R.A.P. 302(a). To assist in our determination of whether issues were preserved, an appellant's brief must contain a Statement of Place of Raising or Preservation of Issues. Pa.R.A.P. 2117(c). This statement must specify the point in the proceedings at which the claims were preserved. *Id.* at (1). It must also indicate how those questions were raised (*e.g.*, by trial objection, by pretrial motion). *Id.* at (2). Additionally, the statement must explain the way in which the trial court passed upon the issues. *Id.* at (3). Finally, the statement must cite to the specific parts of the record showing where the matter appears. *Id.* at (4). If an appellant's brief does not include a Statement of Place of Raising or Preservation of Issues, the appellant must then include all of the aforementioned information in the argument section of the brief. Pa.R.A.P. 2119(e).

¶ 10 When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. *Commonwealth v. Gould,* 912 A.2d 869, 873 (Pa.Super.2006). The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. *Id.;* Pa. R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).

¶ 11 This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Gould,* 912 A.2d at 873. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. *Id.;* Pa.R.A.P. 2101.

¶ 12 With these principles in mind, we turn to Appellant's brief. In his Statement of the Questions Involved, Appellant lists three general questions. We reorganized them into six broad matters. However, this number does not fully reveal the large quantity of claims that are actually raised in Appellant's brief. Indeed, Appellant's arguments, some of which are developed significantly more than others, raise issues of sufficiency of the evidence, weight of the evidence, hearsay, relevance, inflammatory evidence, misleading evidence, lack of foundation, competence, questions beyond the scope of earlier examination, leading questions, prior-bad-acts evidence, the Confrontation Clause of the federal constitution, ineffectiveness of trial counsel (e.g., failure to object to questions and comments by the Commonwealth, failure to cross examine, failure to file discovery requests and/or motions *in limine* ), prosecutorial misconduct (*e.g.*, improper remarks during opening statement and closing argument, improper questions, "testifying" rather than asking questions), trial court abuse of discretion with respect to some or all of the foregoing concerns, jury instruction error, and sentencing errors.

¶ 13 The testimony and prosecutorial remarks about which Appellant complains appear at hundreds of lines on at least ninety-eight transcript pages. He cites no fewer than fifty areas of the trial testimony which he asks us to deem improper, and he references over one hundred comments by the prosecutor which he challenges as constituting misconduct. Moreover, in numerous instances he asserts multiple legal theories with respect to a given part of the testimony and/or a prose-

cutorial comment. In short, Appellant asks us to decide a plethora of legal issues with respect to scores of trial questions, answers and comments.

¶ 14 We understand Appellant's argument that there were so many errors at trial that their cumulative effect produced an unfair proceeding. We also recognize that it can be cumbersome to articulate so many claims. However, the high number of his claims does not relieve him of his obligation to present them in a clear manner. In fact, the substantial number of issues which he wants us to decide makes it even more crucial that he develop his case in an orderly way, pursuant to the applicable briefing rules. Only then can this Court conduct unhampered, meaningful appellate scrutiny.

¶ 15 Unfortunately, Appellant's brief fails to conform to the appellate rules in several material ways. These failures do not relate to all of his issues, but they do concern many of them. Because there are so many legal issues, and because there are numerous briefing defects, we will first discuss the deficiencies in general terms and then proceed to a more specific determination of what issues we will address and what issues are waived for failure to comply with the rules.

¶ 16 At points in his brief, Appellant does not specify what his precise legal argument is with respect to what part of the testimony. He challenges a significant amount of testimony and, while he attacks much of that testimony on hearsay grounds, he also mentions other evidentiary complaints which we previously noted (*e.g.*, relevance, inflammatory evidence, leading questions, questions beyond the scope). It is not always clear as to what his exact objection is, or what **all** of his objections are, to exactly what question(s) and/or answer(s). He thus fails, at some points, to clarify his complaints. We

sometimes do not know what issue applies to what evidence. Appellant needs to tell us precisely every complaint he has with respect to each question asked and/or each answer given at trial.

¶ 17 Also, Appellant quotes some fifty sentences uttered by the prosecutor during his opening statement. While Appellant claims that the full passage is objectionable, he then states that "[m]uch of that argument was incorrect and contradicted by the evidence . . . ." Appellant's Brief at 32 (emphasis added). He also indicates that "[s]ome matters are not even discussed at trial . . . ." *Id.* (emphasis added). He does not give a complete explanation as to which parts of the lengthy quotation he means when he states that "[m]uch" or "[s]ome" of the comments were incorrect, contradicted by the evidence and/or not discussed at trial.

¶ 18 He proceeds in similar fashion with respect to the prosecutor's closing argument. Appellant again cites roughly fifty comments and then contends that "[m]any" of them were false, contradicted by the evidence and highly inflammatory. From the fifty or more comments, Appellant specifies one of them as an example of an improper remark. We are left to speculate as to which of the remaining ones he challenges on precisely which basis or bases.

¶ 19 There are other problems with the brief. Appellant states some general case law for broad propositions, particularly relating to hearsay and prosecutorial misconduct. Throughout most of his lengthy discussion, however, he cites little or no specific authority supporting his many other legal theories. The brief does not adequately give us cases that contain facts related to Appellant's particular issues.

¶ 20 Appellant's Statement of the Case does not contain a Statement of the Place

of Raising or Preservation Issues. Consequently, the Statement of the Case does not specify if and where during the trial proceedings his appellate issues were preserved by objection. Thus, his Statement also does not indicate the method by which any such objections were raised or, if raised, the way in which the trial court passed on them. The argument section of his brief likewise fails to set forth this required information, at least with respect to most of his arguments. (He does indicate that some objections were made but does not do so for all of his claims.) With respect to many of his claims, therefore, Appellant has not met his obligation to show us that they were preserved for our review on direct appeal.

¶ 21 Appellant's failure to tell us whether certain issues were preserved dovetails with his assertions of ineffectiveness. First, we must be clear that, normally, we do not consider ineffectiveness claims on direct appeal but, rather, defer them to collateral attack. *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002). However, where the trial court has held an evidentiary hearing on the claim and has issued an opinion, this Court may review the claim. *Commonwealth v. Bohonyi*, 900 A.2d 877, 883 n. 8 (Pa.Super.2006). Whenever we do review such an issue, we utilize a three-part test. In particular, to prove ineffectiveness, an appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of conduct chosen on the client's behalf; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* at 883. Thus, if we were inclined to entertain Appellant's ineffectiveness claims on appeal, we would certainly have to know what they are and,

consequently, when to apply the tripartite test.

¶ 22 Appellant suggests that trial counsel was ineffective in failing to raise objections to some of the testimony and/or prosecutorial comments. He further argues that we should review the ineffectiveness claims now rather than deferring them to collateral attack. However, as we have already noted, his brief does not always specify the evidence or comments to which counsel supposedly failed to object. We know he claims that counsel failed to raise some objections, but we do not know which ones. Accordingly, we do not know all the places where counsel was supposedly ineffective. We cannot identify all of his ineffectiveness claims.

¶ 23 Some of the evidence and prosecutorial remarks about which Appellant complains should be evaluated solely under the applicable rules of evidence or the law of prosecutorial misconduct. Other testimony and remarks should, perhaps, be evaluated under the tripartite ineffectiveness test. Appellant has not presented a clear argument as to when we should proceed or how. Certainly, this Court makes the final decision on this appeal as to what the proper legal analysis is for each claim of error; but Appellant has an obligation to tell us which issues involve ineffectiveness and which do not.

¶ 24 In summary, Appellant wants us to apply, at various times, numerous, differing legal theories to a significant amount of testimony and to multiple portions of the Commonwealth's opening statement, closing argument and other comments and questions. The number of combinations of legal theories, questions, answers, and comments is substantial. In many instances, he does not tell us what claims were preserved, what the exact legal issue is, and what he believes the applicable law to be. The brief is often unclear. These

various deficiencies hinder our review of this case. Accordingly, we find that Appellant's brief fails in material ways to comply with Pa.R.A.P. 2117(c)(1), (2), (3), (4) and with Pa.R.A.P. 2119(a), (e).

¶ 25 While we could find all of Appellant's issues to be waived, we will nevertheless decide those particular claims which we have been able to consider. As for all other claims raised in Appellant's brief with which we do not specifically deal in the following discussion, we find them to be waived for failure to present and develop them in compliance with the appellate rules that we have just discussed.

### Sufficiency of the Evidence

¶ 26 The test for sufficiency is whether, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, the fact-finder reasonably could have determined that all the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Mackert*, 781 A.2d 178, 186 (Pa.Super.2001). This Court does not weigh the evidence or make credibility determinations. *Commonwealth v. Schoff*, 911 A.2d 147, 159 (Pa.Super.2006). It was for the fact-finder to do so. *Id.* Any doubts concerning a defendant's guilt were to be resolved by the fact-finder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from the evidence. *Id.*

¶ 27 To convict an accused of third degree murder, the Commonwealth must prove that the accused killed another person with malice. *Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363 (2005). Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty. *Id.*

¶ 28 Appellant claims the Commonwealth did not prove malice, thus making the evidence insufficient. As part of his claim, he argues that the evidence was equally consistent with an accident as with Shaken Baby or Shaken Impact Syndrome. Initially, we note that such an argument concedes that there was evidence of a crime but contends that the jury should have believed the accident theory. In this sense, Appellant's argument addresses the weight of the evidence rather than its sufficiency. *Commonwealth v. Morgan*, 913 A.2d 906, 909 (Pa.Super.2006) (holding that a weight argument concedes sufficiency but contests which evidence is to be believed).

¶ 29 Nonetheless, even if we consider Appellant's argument to be a matter of sufficiency, his claim fails. The record supports a finding that Victim's injuries did not arise from the accidental fall described by Appellant. There was expert testimony that Victim died because someone grabbed him and slammed him against something such that immense force was applied to his head. There was also expert testimony that someone grabbed Victim violently, squeezed him so as to fracture his ribs, shook him, and caused his head to strike a hard object with enough force to produce bleeding, swelling and, ultimately, death.

¶ 30 It was reasonable for the jury to conclude that grabbing Victim, an infant, with enough violence to fracture ribs, shaking him and/or otherwise causing his head to strike an object constituted not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty—*i.e.*, malice necessary to support Appellant's murder conviction. *See Commonwealth v. Shaffer*, 722 A.2d 195, 199 (Pa.Super.1998) (holding evidence sufficient to establish malice where record showed infant died of blunt force trauma to the head and had sustained fractured

skull, brain injuries, eight fractured ribs, and several abrasions and bruises on numerous parts of his body). We hold that there was sufficient evidence to find malice.

### Weight of the Evidence

¶ 31 Appellant also explicitly argues that the verdict was against the weight of the evidence. The trial court ordered Appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P.1925(b). Appellant filed a 1925(b) statement but did not include the weight of the evidence as one of his issues. As such, this issue is waived. *Commonwealth v. Flores,* 909 A.2d 387, 389 (Pa.Super.2006).

### Ineffectiveness of Trial Counsel

¶ 32 Before reaching the merits of Appellant's ineffectiveness claims, we must decide whether it is even appropriate for us to address such issues on direct appeal. We reiterate the guiding legal principle that while ineffectiveness claims normally should be deferred until collateral attack, we may review them if the trial court issued an applicable opinion after conducting an evidentiary hearing on the issue. *Bohonyi,* 900 A.2d at 883 n. 8.

¶ 33 After Appellant's counsel withdrew, the court appointed a new lawyer. The new attorney filed post-sentence motions alleging, *inter alia,* trial counsel's ineffectiveness. The court denied Appellant's motions and wrote an opinion addressing his various claims, including ineffectiveness.

¶ 34 There was a post-sentence hearing of some type but we are not persuaded that it included the issue of ineffectiveness. There is no postsentence transcript in the record. Also, the court's opinion seems to rely on trial evidence rather than any evidence adduced post-sentence. Indeed, Appellant claims in his brief that the post-sentence court cited *Grant* and declined to include ineffectiveness during the post-sentence hearing.

¶ 35 Somewhat paradoxically, therefore, while it is Appellant who asks us to review the issue of ineffectiveness, he is also the one who argues that there exists no testimony on prior counsel's stewardship. He insists the trial court opinion is sufficient for review. In any event, Appellant's statement in his brief concerning the content of the hearing (*i.e.,* what issues the hearing addressed) is not itself part of the record. *Commonwealth v. Vasquez,* 715 A.2d 468, 472 n. 6 (Pa.Super.1998) (holding that statements by counsel in briefs are not of record). This Court can only consider facts in the certified record. *Id.* Therefore, we cannot accept Appellant's assertion that the post-sentence hearing did not address ineffectiveness. Perhaps the hearing did deal with ineffectiveness; perhaps it did not.

¶ 36 What we do know is that there is no post-sentence transcript or other portion of the record before us that would cause us to deviate from the normal course of deferring ineffectiveness arguments to collateral proceedings. Accordingly, we dismiss all of Appellant's ineffectiveness issues without prejudice for him to raise them on collateral review. *Commonwealth v. Davido,* 582 Pa. 52, 868 A.2d 431, 441 n. 16 (2005) (deferring ineffectiveness claim to collateral review where trial court wrote an opinion addressing the ineffectiveness issue but the court did so by relying on the preexisting record rather than holding an evidentiary hearing devoted to ineffectiveness).

¶ 37 Finally, we again observe that, because Appellant's brief does not make clear his ineffectiveness claims, we would be unable to address their merits even if we attempted to do so.

### Prosecutorial Misconduct

¶ 38 During its opening statement, the Commonwealth sought to show the jurors certain jury instructions and to comment on some of the elements of homicide, including the relevant states of mind for first and third degree murder. At that time, Appellant objected, claiming that the Commonwealth should not be permitted to discuss these legal matters because it was not then certain which charges would ultimately be submitted to the jury. The trial court prohibited the Commonwealth from displaying the actual jury instructions but otherwise overruled this objection, holding that the Commonwealth should be permitted to discuss the facts in the context of the relevant elements which it was required to prove.

¶ 39 The trial court was correct. Appellant was charged generally with homicide. The Commonwealth's opening remarks discussed first and third degree murder and, to a lesser extent, involuntary manslaughter. Ultimately, these three charges were submitted to the jurors for their deliberations. A prosecutor is permitted to make accurate comments on the applicable law. *Commonwealth v. Carson*, 590 Pa. 501, 537–38, 913 A.2d 220, 241 (2006). As Appellant has not identified anything inaccurate in the Commonwealth's remarks about the applicable law, this issue lacks merit.

¶ 40 As for the remaining, and extensive, remarks which Appellant challenges in the Commonwealth's opening statement and/or closing argument, we find Appellant's challenges thereto to be waived for the reasons stated during our discussion of the briefing requirements, namely Appellant's failure to specify exactly which comments were objectionable, where those claims were preserved by objection, how the trial court passed on the objections and/or the failure to present his

contentions to us in a comprehensible fashion, supported by a sufficient discussion of, and citations to, the relevant law. In short, he has not developed his arguments.

¶ 41 Additionally, Appellant contends that the Commonwealth engaged in misconduct not just during its opening and closing, but also during testimony by asking improper questions and/or "testifying," (*i.e.*, making comments during testimony). These claims are likewise waived for the same reasons that we have just stated.

¶ 42 Moreover, even if we did not find Appellant's claims to be waived, he would not be entitled to relief. Generally, a prosecutor's comments do not constitute reversible error unless their unavoidable effect would be to prejudice the jurors, fixing in their minds bias and hostility toward [Appellant] so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super.2005). We have read the Commonwealth's opening statement, closing argument, and the questions and/or comments made during testimony. We find that none of the prosecutor's remarks or questions would have the unavoidable prejudicial effect required to establish prosecutorial misconduct. All of Appellant's claims of prosecutorial misconduct fail.

### Improper Admission of Evidence

¶ 43 Admission of evidence is within the sound discretion of the trial court and will be reversed only where the court clearly abused that discretion. *Schoff*, 911 A.2d at 154. Proper judicial discretion conforms to the law and is based on facts and circumstances before the court. *Id.* An abuse of discretion is not a mere error of judgment but, rather, involves partiality, prejudice, bias, ill-will, or manifest unreasonableness. *Id.*

¶ 44 Evidence is relevant if it has any tendency to make any fact that is of consequence to the case more or less probable. Pa.R.E. 401. All relevant evidence is admissible unless otherwise provided by law. Pa.R.E. 402. Although relevant, a trial court may exclude evidence if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Pa.R.E. 403.

¶ 45 A medical doctor, Dr. Bellino, told Police Detective Britt that Victim suffered three rib fractures. At trial, the officer testified to this statement, and Appellant objected on hearsay grounds. The Commonwealth indicated that it would not "get into" hearsay, and the court did not issue a specific ruling on the objection. Shortly thereafter, the officer again testified that he had been told by the doctor about the rib fractures. Appellant argues the doctor's statement was inadmissible hearsay.

¶ 46 Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Sometimes, out-of-court statements are offered not to prove the truth of the matter asserted but, for example, to explain the course of conduct undertaken by an investigating police officer. *Commonwealth v. Dent,* 837 A.2d 571, 577 (Pa.Super.2003). Such statements are not hearsay. *Id.*

¶ 47 Even if a court does wrongly admit hearsay, this Court will not disturb a verdict on that basis alone if the admission constitutes harmless error. *Id.* at 582 n. 2. Error is harmless if: (1) the prejudice to the appellant was nonexistent or *de minimis;* (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence was so overwhelming and the preju-

dicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Id.*

¶ 48 Arguably, the officer's testimony was admissible merely to explain his course of conduct during the investigation. However, the transcript does not make clear that the testimony was allowed for that limited purpose. As such, we will regard it as hearsay. Nonetheless, the doctor himself later testified at trial that Victim had rib fractures. Accordingly, the hearsay testimony from the officer was merely cumulative of the untainted, properly admitted and substantially similar testimony which the doctor provided. Admission of the officer's testimony was, therefore, harmless error. Appellant's claim fails.

¶ 49 Appellant again complains of hearsay concerning additional testimony from the officer. Appellant made statements to Victim's mother (Mother). Mother related the statements to one of the investigating officers. The officer testified at trial that Mother had told him (the officer) what Appellant had told her. As such, the officer's testimony potentially involves double hearsay. Double hearsay is admissible if each part conforms to a hearsay exception. Pa.R.E. 805.

¶ 50 In one set of these statements, Appellant told Mother words to the effect that the authorities would come "after" him when they "cut that baby's head open and look at his scrambled brain . . . ." N.T., 3/9/05, at 76. The officer testified that Mother related this conversation to him. The officer's testimony would therefore be proper only if each part of the testimony (Appellant's conversation with Mother and Mother's conversation with the officer) falls within a hearsay exception. As to Appellant's statements to Mother, they were admissible as state-

ments against interest. Pa. R.E. 804(b)(3). However, Mother's statement to the officer does not fit within a hearsay exception. Consequently, it was error for the court to allow the officer to testify to what Mother told him.

¶ 51 Nevertheless, we find no reason to vacate the judgment of sentence. Mother herself testified that Appellant told her the statements about the authorities coming "after" Appellant when they saw the baby's injuries. Because Appellant's statement to her fits within a hearsay exception, her testimony was properly admitted. Therefore, admission of the same testimony from the officer, while error, was harmless.

■■■ ¶ 52 In a second set of comments, Appellant indicated to Mother that he was not concerned about the funeral arrangements and that he needed to be concerned about what was going to happen to him. Once again, Mother's account of these statements was not admissible through the officer. It was error to allow the officer's testimony.

¶ 53 We must decide whether the admission of that testimony was harmless. First, we note that Mother did not testify that Appellant made these statements to her. Therefore, even if Appellant's statements would have been admissible through her, this is not a case where the testimony that was erroneously admitted through the officer evidence duplicates other properly admitted evidence.

¶ 54 Even still, we find that the erroneously admitted evidence was harmless. The officer's reference to Appellant's comments about the funeral were slight when compared to the substantial proof against him. The medical and lay testimony showed that Victim sustained fatal, non-accidental injuries while under Appellant's exclusive control and, moreover, that Appellant fabricated a story as to how Victim

was harmed. The hearsay testimony regarding the funeral was but a small, non-determinative part of a two-day trial in which other overwhelming evidence was properly admitted against Appellant. We find that the error could not have contributed to the verdict.

■■■ ¶ 55 Appellant next contends that the trial court wrongly allowed the Commonwealth to show a computer-generated videotape of Shaken Baby Syndrome. He argues that the tape did not apply to this case because it did not accurately portray Victim's injuries.

¶ 56 The tape helped the medical expert explain his testimony. It was a short, non-dramatic, computer animation consistent with the Commonwealth's theory of the case. This Court has previously upheld the admission of computer-generated animation. *See Commonwealth v. Serge*, 837 A.2d 1255, 1262, 1263 (Pa.Super.2003) (holding use of computer-generated animation proper to illustrate expert testimony where the animation accurately depicted the Commonwealth's theory, was brief, and was devoid of drama). We find no evidence of partiality, bias, ill-will or manifest unreasonableness in the trial court's decision to allow the Commonwealth to show the tape.

■■■ ¶ 57 Appellant also contends that the court should have given a "cautionary instruction" to the jury concerning the use of the tape. He does not tell us what instruction he wanted the court to give. We will not develop Appellant's arguments for him. This claim is waived.

■■■ ¶ 58 We proceed to Appellant's next complaint about the evidence. Prior to trial, Appellant broke his hand by punching a wall. He contends that the injury happened while he was celebrating a Pittsburgh Steelers victory and was not,

therefore, evidence of a prior bad act. He also then complains that the Commonwealth improperly argued in closing that the evidence was proof of Appellant's propensity for violence.

¶ 59 During testimony at trial, when the Commonwealth asked Appellant how he broke his hand, Appellant objected on relevance grounds. He did not object to the Commonwealth's closing argument concerning the evidence of his broken hand. Therefore, Appellant has waived this argument.

### Abuse of Discretion by Sentencing Court

¶ 60 Appellant challenges the discretionary aspects of his sentence. He does not have an absolute right to do so. *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super.2006). Rather, he must petition this Court to accept his appeal by including in his brief a concise statement of reasons relied upon for allowance of appeal. *Id.* If he persuades us that he has presented a substantial question concerning the propriety of his sentence, we will grant appeal and consider the merits of his argument. *Id.*

¶ 61 As a general matter, an appellant raises a substantial question by advancing a plausible claim that the sentencing court's actions were inconsistent with a specific provision of the sentencing code or were contrary to the fundamental norms underlying the sentencing process. *Id.* at 1252. We do not accept or reject an entire class of questions as being or not being substantial. *Id.* Rather, we evaluate each question on a case-specific basis. *Id.*

¶ 62 Appellant's brief includes a statement of reasons for appeal. The statement claims that the sentence was improper, unreasonable and excessive because the court did not adequately consider numerous aspects of Appellant's history, character and condition. Usually, claims that a court did not adequately consider such factors do not raise a substantial question. *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 653 A.2d 706, 710 (1995). We note, too, that the statement of reasons does not cite any specific portion of the sentencing code as being violated and sets forth no case law supporting the contention that the alleged inadequate consideration of factors offended a fundamental norm of sentencing. We find that Appellant has failed to present to us a substantial question and we deny his request for appeal of the discretionary aspects of sentence.

¶ 63 In any event, even if we were to find that Appellant raised a substantial question, he would not be entitled to relief. His sentence of 18 to 40 years was within the standard range. Appellant has not presented any argument convincing us that this sentence violated any provision of the sentencing code or the fundamental norms of the sentencing process.

¶ 64 For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

¶ 65 Judgment of sentence affirmed.