J-S12036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE MARMOLEJOS | : | |
| | : | |
| Appellant | : | No. 188 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 16, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005469-2018,
CP-51-CR-0005470-2018, CP-51-CR-0005964-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE MARMOLEJOS | : | |
| | : | |
| Appellant | : | No. 189 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 16, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005469-2018,
CP-51-CR-0005470-2018, CP-51-CR-0005964-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE MARMOLEJOS | : | |
| | : | |
| Appellant | : | No. 190 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 16, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005469-2018,
CP-51-CR-0005470-2018, CP-51-CR-0005964-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    Filed: May 27, 2021

Jose Marmolejos ("Marmolejos") appeals from the judgments of sentence imposed following his convictions of unlawful contact with minor, endangering the welfare of children ("EWOC"), corruption of minors, indecent assault of a child less than 16 years of age, involuntary deviate sexual intercourse ("IDSI") with a child less than 13 years of age, and aggravated indecent assault of a child less than 13 years of age at docket number CP-51-CR-0005469-2018 ("5469-2018");[1] unlawful contact with minor, EWOC, corruption of minors, and indecent assault of a child less than 13 years of age at docket number CP-51-CR-0005470-2018 ("5470-2018");[2] and unlawful contact with minor, EWOC, IDSI with a child less than 13 years of age, aggravated indecent assault of a child less than 13 years of age, indecent assault of a child less than 13 years of age, corruption of minors, and

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 4304(a)(1), 6301(a)(1)(ii), 3126(a)(8), 3123(b), 3125(b).

[2] 18 Pa.C.S.A. §§ 6318(a)(1), 4304(a)(1), 6301(a)(1)(ii), 3126(a)(7).

attempted rape of a child less than 13 years of age at docket number CP-51-CR-0005964-2018 ("5964-2018").[3]  We affirm.

From approximately December 2006, until his arrest in 2018, Marmolejos lived with his step-granddaughters, A.T., S.M., and I.M.,[4] at a residence on Vandike Street in Philadelphia, Pennsylvania.  M.M., Marmolejos's biological granddaughter, did not live with Marmolejos, but spent overnight weekends at his house, until M.M.'s family moved in 2015.  M.M. and A.T. were the same age.

When M.M. was between the ages of 7 and 11 years old, Marmolejos sexually abused her repeatedly.  One night when M.M. was approximately 7 years old, M.M. awoke to find that Marmolejos had lifted up her shirt, rubbed her stomach, and began to rub her vaginal area over her clothes.  M.M. recalled another incident in which she awoke to find Marmolejos removing her clothes.  In that incident, Marmolejos placed his mouth over M.M.'s vagina and performed oral sex on her.

Sometime after M.M. turned 8, M.M. Marmolejos woke M.M., wearing nothing but his underwear, picked M.M. up and placed her on top of him.  Marmolejos then groped M.M. before he pulled his penis out of his underwear

---

[3] 18 Pa.C.S.A. §§ 6318(a)(1), 4304(a)(1), 3123(b), 3125(b), 3126(a)(7), 6301(a)(1)(ii), 901(a).

[4] We note that S.M. and I.M. were not born until 2007 and 2010, respectively, but they lived with Marmolejos until his arrest.

and rubbed it on M.M.'s vaginal area. When M.M. turned 10, Marmolejos rubbed M.M.'s buttocks in the kitchen while she prepared food. Additionally, Marmolejos showed M.M. and A.T. pornographic magazines while they sat on Marmolejos's bed together. The abuse stopped when M.M. was 11 years old, because her family moved to Louisiana.

When A.T. was between the ages of 7 and 14 years old, Marmolejos sexually abused her as well. On numerous occasions, Marmolejos waited for A.T.'s mother to leave for work and then took A.T. down to the basement laundry room. Marmolejos put A.T. on top of the washing machine and inserted his fingers into her vagina. At first, Marmolejos did not remove A.T.'s clothes. Eventually, Marmolejos removed A.T.'s clothes and performed oral sex on her.

On several occasions, Marmolejos took A.T. upstairs to his bedroom and showed her pornographic videos. During these incidents, Marmolejos pulled down A.T.'s pants and fondled her breasts and buttocks. Sometimes M.M. was present for these incidents, but not always, as M.M. only visited on the weekends. During the incidents when M.M. was present, Marmolejos touched both M.M.'s and A.T.'s vaginas, in addition to their buttocks and breasts.

Subsequently, when A.T. was 10 years old, Marmolejos began to force A.T. to touch his penis. Marmolejos would unzip his pants, show his penis to A.T., and force her to grip his penis. All of these incidents occurred repeatedly until sometime in 2017, when A.T. ran away from home.

When S.M. was between the ages of 8 and 10 years old, Marmolejos sexually abused her as well. Marmolejos took S.M. into his personal bathroom and showed S.M. his penis. Sometime later, Marmolejos began regularly showing S.M. pornographic videos. After S.M. turned 10 years old, Marmolejos began groping S.M.'s buttocks while she prepared to shower. In one incident, Marmolejos claimed to "help" S.M. in the shower by washing her back. However, Marmolejos fondled S.M.'s buttocks instead. S.M.'s mother came up the stairs and asked S.M. if everything was okay. Marmolejos told S.M. to say everything was fine or else "something would happen." N.T. (Jury Trial), 10/2/19, at 141. After S.M.'s mother left, Marmolejos exited the bathroom.

In March 2018, A.T. reported the sexual assaults to police. Both M.M. and S.M. thereafter reported the sexual assaults perpetrated by Marmolejos against each child. Subsequently, on July 16, 2018, the Commonwealth charged Marmolejos with, *inter alia*, the above-mentioned offenses.[5] Marmolejos was arrested the next day. On October 31, 2018, the Commonwealth filed a Motion to Consolidate Marmolejos's cases, which the

---

[5] The offenses regarding M.M. were docketed at 5964-2018. The offenses regarding A.T. were docketed at 5469-2018. The offenses regarding S.M. were docketed at 5970-2018.

trial court granted. On May 31, 2019, the Commonwealth filed a Motion in *Limine* requesting, *inter alia*, enforcement of the Rape Shield Law.[6]

On September 27, 2019, Marmolejos filed a *pro se* Rule 600 Motion,[7] alleging that the Commonwealth had failed to bring him to trial within 365 days. Prior to the start of the jury trial, the trial court granted the Commonwealth's Motion in *Limine*, and denied Marmolejos's Motion.

On October 1, 2019, Marmolejos proceeded to a jury trial, after which he was convicted of the above-mentioned offenses. The trial court deferred sentencing for preparation of a pre-sentence investigation report and a mental health evaluation.

On December 16, 2019, the trial court sentenced Marmolejos, at 5469-2018, to an aggregate prison term of 20 to 40 years. At 5964-2018, the trial court sentenced Marmolejos to and aggregate prison term of 10 to 20 years. At 5470-2018, Marmolejos was sentenced to an aggregate prison term of 3½ to 7 years. Marmolejos's sentences at 5469-2018, 5964-2018, and 5470-2018, were imposed concurrently, resulting in an aggregate prison term of 20 to 40 years.

---

[6] *See* 18 Pa.C.S.A. § 3104 (prohibiting "evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct[,]" except for "evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue").

[7] While this Motion was filed *pro se*, Marmolejos's trial counsel adopted the Motion and argued it before the trial court.

On December 23, 2019 Marmolejos filed four, *pro se*, Notices of Appeal, which were docketed at 172 EDA 2020, 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020. Each *pro se* Notice of Appeal listed all 3 of Marmolejos's trial court docket numbers. The appeals docketed at 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020, all purported to appeal from his judgments of sentence, entered on December 16, 2019. The appeal docketed at 172 EDA 2020 did not specify an order forming the basis of the appeal. On January 22, 2020, Marmolejos's appointed counsel, Douglas Lee Dolfman, Esquire ("Attorney Dolfman"), filed one counseled Notice of Appeal, docketed at 550 EDA 2020. The appeal docketed at 550 EDA 2020 purported to appeal from an order entered on December 23, 2019.[8]

On January 14, 2020, this Court issued three Rules to Show Cause, at 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020, respectively, as to why Marmolejos's appeals should not be quashed pursuant to ***Commonwealth v. Walker***, 185 A.3d 969, 971 (Pa. 2018). Marmolejos did not respond, and on June 15, 2020, this Court issued three additional Rules to Show Cause directing Attorney Dolfman to respond to the January 14, 2020, Rules to Show Cause within 10 days. On June 18, 2020, Attorney Dolfman filed three Responses, one at each docket number.

---

[8] None of the dockets in the certified records before us list an order filed on December 23, 2019.

On November 2, 2020, after numerous extensions across all 5 appellate dockets, this Court concluded that Attorney Dolfman had abandoned Marmolejos, and that such abandonment and excessive extension requests had resulted in a breakdown in court processes. Consequently, on the same day, this Court, *sua sponte*, reinstated Marmolejos's appeals at 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020, pursuant to **Commonwealth v. Braykovich**, 662 A.2d 133, 136 (Pa. Super. 1995) (finding that this Court may grant relief from effects of breakdown in court system). In the same Order, this Court remanded Marmolejos's reinstated appeals for 30 days in order for the trial court to remove Attorney Dolfman as counsel of record, and to appoint new counsel for Marmolejos. Further, the trial court was directed to determine whether to impose sanctions on Attorney Dolfman, including, but not limited to, reporting Attorney Dolfman's abandonment to the Disciplinary Board.

On November 9, 2020, Attorney Dolfman filed a Response with this Court, claiming that he had notified Marmolejos of the above-described dismissals and reinstatement. Further, Attorney Dolfman stated he was still representing Marmolejos. On that same date, the trial court removed Attorney Dolfman as counsel of record, and appointed Lawrence O'Connor, Esquire ("Attorney O'Connor"), to represent Marmolejos.

On December 3, 2020, this Court issued Rules to Show Cause, at 172 EDA 2020 and 550 EDA 2020, directing Attorney O'Connor to show cause why

172 EDA 2020 and 550 EDA 2020 should not be quashed "as having been taken from a purported order which is not entered upon the appropriate docket of the lower court[]" pursuant to Pa.R.A.P. 301(a)(1). Further, this Court directed Attorney O'Connor to explain why 172 EDA 2020 and 550 EDA 2020 should not be quashed as duplicative of the appeals at 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020. On the same day, Attorney O'Connor filed two Responses in which he conceded that 172 EDA 2020 and 550 EDA 2020 were duplicative. This Court subsequently dismissed the appeal docketed at 172 EDA 2020, and quashed the appeal docketed at 550 EDA 2020 as duplicative.

At the remaining appellate dockets of 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020, on December 3, 2020, this Court discharged all of its previous June 15, 2020, Rules to Show Cause and deferred any remaining issues to the merits panel. In the same Order, this Court *sua sponte* consolidated Marmolejos's remaining appeals. We conclude that the above-captioned appeals, docketed at 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020, were timely filed.[9]

However, prior to addressing the merits of Marmolejos's claims, we must address the procedural posture of his remaining appeals docketed at 188 EDA 2020, 189 EDA 2020, and 190 EDA 2020, pursuant to Pa.R.A.P. 341 and our

_____

[9] Marmolejos did not file Pa.R.A.P. 1925(b) concise statements of error complained of on appeal, because the trial court did not order any such statements.

Supreme Court's decision in **Walker**. The Official Note to Pa.R.A.P. 341(a)

provides, in relevant part, as follows:

> Where … one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. … **Commonwealth v. C.M.K.**, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

In **Walker**, our Supreme Court held that pursuant to Rule 341, "where

a single order resolves issues arising on more than one docket, separate

notices of appeal must be filed for each case." **Walker**, 185 A.3d at 971. Our

Supreme Court concluded that "[t]he Official Note to Rule 341 provides a

bright-line mandatory instruction to practitioners to file separate notices of

appeal…. The failure to do so requires the appellate court to quash the appeal."

**Id.** at 976-77. Our Supreme Court applied its holding prospectively to appeals

filed after June 1, 2018. Thus, where one or more orders resolves issues

arising on more than one docket or relating to more than one judgment,

separate notices of appeal must be filed. **C.M.K.**, **supra**.

All three of Marmolejos's *pro se* Notices of Appeal list all three trial court

docket numbers. Moreover, we note that in each of his *pro se* Notices of

Appeal, Marmolejos placed a check mark next to the corresponding trial court

docket number. This Court has concluded that such filings do not violate the

rule stated in **Walker**. **See Commonwealth v. Johnson**, 236 A.3d 1141,

- 10 -

1148 (Pa. Super. 2020) (stating that four separate Notices of Appeal were compliant with *Walker* where each Notice of Appeal included all four trial court docket numbers, and that "each notice of appeal list[ing] all four docket numbers does not invalidate his notices of appeal"). Therefore, we will address the merits of Marmolejos's appeal.

Marmolejos raises the following claims for our review:

1. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes of [IDSI], aggravated indecent assault of a child, and attempted rape of a child[?]

2. Whether the jury verdict was against the weight of the evidence[?]

3. Whether the trial court the trial court [*sic*] erred by dismissing the Rule 600 [M]otion[?]

4. Whether the trial court abused its discretion by precluding evidence of third[-]party abuse allegations[?]

Brief for Appellant at 8.

In his first claim, Marmolejos argues that the Commonwealth failed to present sufficient evidence of "every element" of all of his offenses. Brief for Appellant at 18-19.[10]

As to Marmolejos's challenges to his convictions of attempted rape of a child, and IDSI with a child less than 13, we will address the merits separately.[11]

First, Marmolejos claims that the Commonwealth presented insufficient evidence to sustain his convictions of IDSI as to M.M. and A.T. Brief for

_____

[10] To the extent Marmolejos challenges "every element" of "all of his offenses," these challenges are waived. As we discuss *infra*, Marmolejos only argues three of his convictions: attempted rape of a child in regard to M.M.; and IDSI with a child less than 13 in regards to both A.T. and M.M., with specificity. Accordingly, any challenges he intended to raise as to the sufficiency of his remaining 14 convictions have been waived. **See** Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."); **see also Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (stating that "it is appellant's duty to present arguments that are developed for our review" and "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant."); **Commonwealth v. Ivy**, 146 A.3d 241, 254 (Pa. Super. 2016) (stating that failure to raise an issue in the statement of questions involved waives the issue on appeal) (citing Pa.R.A.P. 2116(a)).

[11] Marmolejos also identified his convictions of aggravated indecent assault of a child, unlawful contact with minor, corruption of minors, and EWOC. Brief for Appellant at 19. However, in his two-paragraph argument on these claims, Marmolejos does not identify the elements as to each victim, and each charge, that he challenges. **See id.** Accordingly, Marmolejos has waived these claims. **See** Pa.R.A.P. 2119(a); **see also Hardy**, **supra**. Moreover, we observe that instead of challenging any particular element of these remaining offenses, Marmolejos argues that each of the victims provided vague, inconsistent, unreliable, and false testimony against him. **Id.** Marmolejos did not raise these claims before the trial court, and accordingly, these claims are waived. **See Hardy**, **supra**; Pa.R.A.P. 302(a).

Appellant at 19. Marmolejos argues that neither A.T., nor M.M., testified that Marmolejos had anally or vaginally penetrated them. *Id.* Marmolejos claims that IDSI requires "penetration of the mouth or anus by a perpetrator's penis" and "[i]f oral penetration were sufficient … the statute would not make reference to emission." *Id.* Marmolejos acknowledges that his mouth was on M.M.'s and A.T.'s vaginal area, but contends that neither testified to vaginal penetration. *Id.*

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Crimes Code, in relevant part, provides as follows: "A person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13

years of age." 18 Pa.C.S.A. § 3123(b). Deviate sexual intercourse is defined as "[s]exual intercourse per os or per anus between human beings…. The term also includes penetration, *however slight*, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical hygienic or law enforcement procedures." ***Id.*** § 3101 (emphasis added). "Our courts have viewed the phrase intercourse per os or per anus as describing oral and anal sex." ***Commonwealth v. Kelley***, 901 A.2d 551, 555 n.4 (Pa. 2002) (citation and quotation marks omitted).

Our review of the record reveals that, on at least one occasion, Marmolejos performed oral sex on M.M. ***See*** N.T. (Jury Trial), 10/02/19 at 24-26 (wherein M.M. described at least one occasion where Marmolejos removed her "bottom clothes," placed his mouth on her vaginal area and felt "[w]eird" as Marmolejos moved his mouth on her vagina). M.M. was 7 years old at the time of this incident. ***Id.*** at 65.

In regards to A.T., the evidence of record establishes that, since A.T. was 7 years old, Marmolejos would take her downstairs to the laundry room, place A.T. on top of the washing machine, at which time he either digitally penetrated her vagina or performed oral sex on her. N.T. (Jury Trial), 10/2/19, at 88, 105-07. In particular, on cross examination, A.T. testified that Marmolejos took her down to the basement numerous times, and that "[s]ometimes one part of my clothing would be off or pulled up, or my pants would be pulled halfway down[]" when Marmolejos's mouth was on her

vagina. *Id.* at 105-07. A.T. testified that these incidents made her feel "uncomfortable" and that she could feel Marmolejos's mouth moving on her vagina. *Id.* at 88-91.

Based upon the foregoing, the Commonwealth presented sufficient evidence to support Marmolejos's convictions of IDSI in regard to both A.T. and M.M. *See* 18 Pa.C.S.A. §§ 3123(b), 3101; *see also Kelley*, *supra*; *Commonwealth v. Ziegler*, 550 A.2d 567, 569-70 (Pa. Super. 1988) (stating that a victim's testimony that the defendant had performed oral sex on her vagina was sufficient evidence to prove that the defendant engaged in sexual intercourse with the victim) (abrogated on other grounds by *Commonwealth v. Goggins*, 748 A.2d 721 (Pa. Super. 2000)).

In his next sufficiency challenge, Marmolejos contends that he did not vaginally or anally penetrate M.M., and therefore, the Commonwealth presented insufficient evidence to sustain his conviction of attempted rape of a child. Brief for Appellant at 18-19. Marmolejos acknowledges that he rubbed his penis on the outside of M.M.'s clothed vagina, but argues that this does not constitute a substantial step for the purposes of criminal attempt. *Id.* at 19.

The Crimes Code provides that "[a] person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). In defining sexual intercourse, the Crimes Code provides that,

"[i]n addition to its ordinary meaning, [sexual intercourse] includes intercourse per os or per anus, with some penetration however slight; emission is not required." *Id.* § 3101. Additionally, an individual commits the offense of criminal attempt when, "with specific intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime." *Id.* § 901(a).

In addition to the above-described oral sex incident, our review of the record reveals that, on one night, Marmolejos groped M.M., digitally penetrated M.M.'s vagina, exposed his penis to M.M., and rubbed his bare penis on M.M.'s clothed vagina. N.T. (Jury Trial), 10/2/19, at 18-22. Thus, the Commonwealth presented sufficient evidence that Marmolejos had taken a substantial step towards rape of a child less than 13 years of age. *See Commonwealth v. Moody*, 441 A.2d 371, 373 (Pa. Super. 1982) (concluding that defendant had taken a substantial step when he began to unzip his pants after molesting the 12-year-old child victim).

In his second claim, Marmolejos asserts that the jury's entire verdict was against the weight of the evidence. Brief for Appellant at 20. Marmolejos asserts that the victims presented vague and "terribly inconsistent" testimony, and that their testimony was fabricated. *Id.* Marmolejos argues that his "unequivocal denial" deserves greater weight than the victims' inconsistent and vague testimony. *Id.*

We observe that Marmolejos did not assert that the jury's verdict was against the weight of the evidence in a post-sentence motion or orally before the trial court. *See* Pa.R.Crim.P. 607(A) (providing that "[a] claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial."); *see also Commonwealth v. Gaskins*, 692 A.2d 224, 228 (Pa. Super. 1997) (explaining that "[a]s a general rule, weight of the evidence claims must first be posed to the trial court and cannot be considered for the first time on appeal."). Therefore, Marmolejos's weight claim is waived.

In his third claim, Marmolejos contends that the trial court erred in denying his Rule 600 Motion. Brief for Appellant at 21. Marmolejos argues that he was arrested on March 3, 2018, the mechanical run date was March 3, 2019; and he was not tried until October 1, 2019. *Id.* Marmolejos acknowledges that he requested two continuances, but contends that his adjusted mechanical run date was July 28, 2019. *Id.* Marmolejos asserts that the Commonwealth failed to alert the trial court as to the adjusted mechanical run date, and that the Commonwealth failed to request the earliest possible date. *Id.*

"In evaluating Rule 600 issues, our standard of review of the trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*).

> The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the

trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

Rule 600 provides, in relevant part, as follows:

**(A) Commencement of Trial; Time for Trial**

* * *

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a). "Rule 600 generally requires the Commonwealth to bring a defendant … to trial within 365 days of the date the complaint was

filed." ***Hunt***, 858 A.2d at 1240. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief. ***Id.*** at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600." ***Commonwealth v. McNear***, 852 A.2d 401, 406 (Pa. Super. 2004).

> It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

***Id.*** In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes in[to] account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

***Hunt***, 858 A.2d at 1241 (internal citations and footnote omitted); ***see also Commonwealth v. Burno***, 154 A.3d 764, 793-94 (Pa. 2017) (explaining that excusable delay is not calculated against the Commonwealth in a Rule 600 analysis, as long as the Commonwealth acted with due diligence at all relevant times).

In this case, the Commonwealth filed the written Complaints against Marmolejos on July 16, 2018, and Marmolejos was arrested the following day.[12]  Thus, the mechanical run date for Rule 600 purposes was July 16, 2019.  Marmolejos's trial began on October 1, 2019, 77 days beyond the initial mechanical run date.  On October 30, 2018, Marmolejos filed a Request for Continuance, and requested an extension to December 11, 2018.  The trial court granted Marmolejos's Request and continued the proceedings until December 11, 2018.  The trial court subsequently continued the proceedings to March 18, 2019.  Then, on February 15, 2019, 31 days before the new trial date, Marmolejos filed another Request for Continuance, which the trial court granted, and continued the proceedings until May 31, 2019.[13]  Both of these defense continuances yield a 147-day span that was excludable for the purposes of Rule 600.  **See Hunt**, 858 A.2d at 1241 (stating that a defendant's continuance is excludable).

Adding the 147 days of excludable time to Marmolejos's mechanical run date results in an adjusted run date of December 10, 2019.  Marmolejos filed his Rule 600 Motion on September 27, 2019.  Therefore, Marmolejos's Rule

---

[12] Marmolejos contends that he was arrested on March 3, 2018; however, he does not indicate from where in the record he procured this date.  Moreover, none of the records before this Court indicate that Marmolejos was arrested or charged with any offenses in March 2018.  Indeed, the record reveals that Marmolejos was charged on July 16, 2018, and arrested the next day.

[13] On May 31, 2019, the Commonwealth filed its Motion in *Limine*, and the trial court subsequently continued the proceedings to October 1, 2019.

600 Motion was premature, and we discern no abuse of discretion in the trial court's denial of Marmolejos's Motion.  **See Hunt**, 858 A.2d at 1243.

In his fourth claim, Marmolejos contends that the trial court abused its discretion by precluding evidence of prior sexual assaults against A.T.  Brief for Appellant at 22.  Marmolejos argues that the victims were fabricating the sexual assault allegations, and therefore, his knowledge of the previous sexual assaults by a third party was relevant to establish "how [A.T.] would have the knowledge and ability to describe the acts perpetrated upon her … and testify to them at [Marmolejos]'s trial."  **Id.**

Preliminarily, we observe that Marmolejos has waived this claim.  Prior to the start of trial, the trial court heard argument on the Commonwealth's Motion in *Limine* to enforce the Rape Shield Law.  N.T. (Jury Trial), 10/1/19, at 3-4.  Shortly thereafter, Marmolejos agreed with the Commonwealth that there was "no real issue … in terms of [R]ape [S]hield [L]aw," and conceded this issue.  **Id.** at 3.  Immediately afterwards, the trial court granted the Commonwealth's Motion and precluded "evidence of prior or subsequent sexual conduct by any of the complainants and third party [*sic*], as well as prior or subsequent sexual abuse of any of the complainants by a third party[.]"  **Id.** at 4.  Accordingly, Marmolejos has waived his final claim.  **See** Pa.R.A.P. 302(a); **see also Hardy**, **supra**.

Judgments of sentence affirmed.

- 21 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/21