J-S26016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID STEVENS O/B/O S.M.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NATE GUNNET | : | |
| | : | No. 158 MDA 2025 |
| Appellant | : | |

Appeal from the Order Dated January 24, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2024-FC-002169-12A

BEFORE:  LAZARUS, P.J., OLSON, J., and BECK, J.

MEMORANDUM BY OLSON, J.:               **FILED OCTOBER 14, 2025**

Appellant, Nate Gunnet, appeals from the final Protection From Abuse

("PFA") order, which was entered on January 24, 2025.  We affirm.

The trial court ably summarized the underlying facts of this case:

> The minor child, S.M.M.-S. [("Child"),[1]] is the natural born child of [David Stevens ("Father") and S.M. ("Mother")]. Prior to the [trial] court's PFA order, the parents were bound by a stipulated order of custody of February 2, 2024 that granted [the] parties shared legal and [] physical custody [of Child].  The parties came before the [trial] court on Father's Petition for Special Relief, Petition for PFA against Mother, and Petition for PFA against [Appellant], Mother's paramour, with whom she resides.[fn.1]  At a combined hearing on January 24, 2025, the [trial] court denied the PFA against Mother and granted a three-year no-contact PFA against [Appellant].  The [trial] court also entered a temporary

---

[1] Child was eight years old at the time of the January 24, 2025 PFA hearing. N.T. Hearing, 1/24/25, at 2.

custody order pending conciliation, granting [Mother and Father] joint legal custody, Father primary physical custody, and Mother fully supervised partial physical custody with custodial periods supervised by a professional supervisor. The custody order provided that Child will have no contact with [Appellant]. Father was ordered to arrange a conciliation conference within [20] days or the temporary custody order would expire. By way of subsequent procedural history, at the conciliation conference related to Father's petition for modification, Father and Mother entered into a stipulated order for custody on March 14, 2025, which mirrored the [trial] court's temporary order except that Father was also awarded sole legal custody. Pursuant to the agreement, Mother's periods of partial physical custody remain fully supervised by a professional supervisor.

[fn.1] [Appellant's] two children also live in his home[, as do] Mother's two children during her custodial periods.

Regarding the PFA [order] against [Appellant], on October 15, 2024, Father filed a [PFA] petition . . . in favor of [Child]. Among other things, the petition alleged that Mother and [Appellant] strike [Child] and leave bruises, [Appellant] "instructs Mother to harm Child and she complies," and Mother "allows [Appellant] to use objects to hurt Child." The petition alleges that [Appellant] "has his oldest son [] beat" Child leaving marks, and that Child has witnessed the abuse of other children in the home, including a six-year-old girl who was confined to a bedroom with no contact with anyone for three days. Further, the petition alleges that Child is told to stay outside unattended for hours or all day so that [Appellant] "can play video games in silence" and that Child was punished for going to a neighbor's home when no one was present to let him in after school. The petition alleged further that [Appellant] "threw [Child] off of a 20-foot rock because he was afraid to jump" at a location that is not meant for children to swim because it is too dangerous. The petition alleged that Child has indicated that he does not feel safe. The PFA [petition] asserted the involvement of Child's school, to whom Child has reported abuse; CPS, for all four children in [Appellant's] home; the state police; and the existence of a past PFA [order] against [Appellant] in favor of [Mother].

- 2 -

Pursuant to [23 Pa.C.S.A. § 6107(a)], the [trial] court held an evidentiary hearing on January 24, 2025 to determine if a final PFA [order] should be granted. First, the [trial] court interviewed [Child] *in camera*, with counsel present. Child testified that he lived primarily with Mother in Maternal Grandmother's home until Mother moved out to live with [Appellant]. Child testified that [Appellant] opened the door on his shoulder and knew that Child was there and that it hurt for two to three minutes. Child gave hearsay testimony that [Appellant] had locked his three-year-old brother in a closet when he was two years old. When asked how Child knew this, he explained that [Appellant's] son, an older child in the home, had told him. Child testified that [Appellant] "makes us stay outside whenever he's playing video games, or we have to stay in our rooms and be silent." Child indicated that "every single time we mess up a little bit, he, like . . . makes us go outside or upstairs and stay silent upstairs." Child indicated that the door to his room is "really hard to open" and that [Appellant] closed it, and he was stuck until "somebody let me out." Child indicated that he does not feel safe around [Appellant]. When asked if he feels safe around Mother, he answered "a little bit." When Child was asked if he feels safe with Mother when [Appellant] is not around, he indicated that he does. Child indicated that he feels safe with Father.

Next [Maternal Grandmother] testified regarding a concerning experience she had with [Appellant]. Maternal Grandmother testified that she went to [Appellant's] home to drop off [Child] and his three-year-old brother once and [Appellant] had a beer and a large handgun on the living room table. Maternal Grandmother testified that she asked [Appellant] if the gun was loaded and he indicated that it was and asked if it bothered her, to which she replied that it did. Maternal Grandmother indicated that she asked [Appellant] if he had a safety on the gun and he indicated that he did not. Maternal Grandmother testified that [Appellant] asked if she wanted him to put the gun away and she answered in the affirmative because Child and his three-year-old brother were in the house. Maternal Grandmother testified that [Appellant] then told her that "they know better than to touch guns." Maternal Grandmother testified that every time she would take the children to [Appellant's] house, they would cry and not want to go into the home. Maternal Grandmother

- 3 -

testified that Child said they were afraid of [Appellant], which the [trial] court [admitted into evidence, as relevant] to Child's state of mind. Maternal Grandmother testified to her own observation that the children seemed fearful. On cross-examination, Maternal Grandmother testified that the gun was absolutely not in a gun case.

In response to the allegations in the PFA petition against [Appellant], Mother testified that she had never seen [Appellant] strike either of her children and leave bruises and that he never instructed her to harm her children and she complied. Mother testified that [Appellant] disciplines his own children and she disciplines hers, although [Appellant] would later contradict this testimony. Mother indicated that she did not know anything about an incident in which [Appellant] opened a door and intentionally hit Child in the shoulder. Mother also testified that Child had not ever come to her and reported that something had happened. When asked if she had ever noticed any bruise on any of the children, while in her care, Mother responded "Never." Mother also testified that none of the interior doors have locks except a bathroom and that there was never a time when [Appellant] had locked Child's three-year-old brother in a closet. Mother testified that she punishes her children by having them stand in a corner or sends them to their room. Mother testified that she would send her children to their room once or twice a year and that she was not aware of any time when [Appellant] demanded that his children go to their room and stay for extended periods of time and not make noise. Likewise, Mother had no knowledge of [Appellant] making the children go outside while he plays video games and no knowledge . . . of [] Child and [Appellant's] son fighting outside of wrestling with each other. Mother indicated that [Appellant] did nudge Child off an eight foot rock at a swimming hole where [Appellant's] children were jumping off and where Child has subsequently jumped off at least 100 times in the past two years. Mother testified that she was not present when the incident with the gun occurred about which Maternal Grandmother testified because she was at work. Mother indicated that her children know that [Appellant] has a gun. Mother denied all other allegations in the petition.

Next, [Appellant] testified, denying that he had ever hit Child in the shoulder with a door, locked the three-year-old in a closet, or struck Mother's children with any objects causing bruises. [Appellant] testified that there was never a time when he made the children stay outside for extended periods, rather that he has asked them to play outside to get some fresh air when its nice out. Likewise, [Appellant] testified that there were no times when he made the children go to their rooms for extended periods and no times when he was playing video games that he told the children to go to their room and be silent. Contrary to Mother's testimony, [Appellant] did indicate that he has disciplined Mother's children when she was not around by putting them in the corner a couple of times. [Appellant] testified that he never had his son beat up Child. [Appellant] testified that both children are in engaged in organized wrestling and that they do wrestle each other. Neither Mother nor [Appellant] disputed Child's testimony that he was stuck in his room until someone let him out.

Regarding CYS referrals, [Appellant] testified and Plaintiff stipulated that all referrals were deemed unfounded. However, [Appellant] testified that when CYS tested him for drugs, he tested positive for marijuana, and he does not have a prescription. [Appellant] also acknowledged the existence of a PFA order that was filed in October 2020.

Trial Court Opinion, 3/28/25, at 1-6 (citations and some footnotes omitted).

On January 24, 2025, the trial court entered a final PFA order in favor of Child and against Appellant for a period of three years. *See* N.T. Hearing, 1/24/25, at 59. Appellant filed a timely notice of appeal and, in his concise statement of errors complained of on appeal, Appellant claimed that the evidence was insufficient to support a finding of abuse under the PFA Act. Appellant's Rule 1925(b) Statement, 1/29/25, at 1.

On March 28, 2025, the trial court filed its Rule 1925(a) opinion in the matter. In this opinion, the trial court explained that it granted the final PFA

order because it found Appellant committed "abuse," as that term is defined under 23 Pa.C.S.A. § 6102(a)(**2**).[2] Specifically, the trial court explained, it concluded that Appellant committed abuse by "[p]lacing [Child] in reasonable fear of imminent serious bodily injury." **See** 23 Pa.C.S.A. § 6102(a)(2) (defining the term "abuse" as: "[t]he occurrence of one or more of the

---

[2] Section 6102(a) defines the term "abuse" in the following manner:

> "Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).
>
> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a).

following acts between family or household members, sexual or intimate partners or persons who share biological parenthood: . . . (2) Placing another in reasonable fear of imminent serious bodily injury"); *see also* Trial Court Opinion, 3/28/25, at 7 (the trial court explained that Appellant abused Child by "[p]lacing [Child] in reasonable fear of imminent serious bodily injury").

Appellant filed his brief on May 22, 2025 – approximately two months after the trial court filed its Rule 1925(a) opinion. Within Appellant's brief, Appellant claims that the evidence was insufficient to support a finding of abuse under 23 Pa.C.S.A. § 6102(a)(**1**), as there was no evidence that Appellant "[a]ttempt[ed] to cause or intentionally, knowingly or recklessly caus[ed] bodily injury, serious bodily, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault, or incest with or without a deadly weapon" to Child. Appellant's Brief at 11; *see also* 23 Pa.C.S.A. § 6102(a)(1) (defining the term "abuse" as: "[t]he occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood: . . . (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon").

Appellant's claim on appeal necessarily fails, as it is grounded in the mistaken assertion that the trial court found "abuse" as that term is defined

in 23 Pa.C.S.A. § 6102(a)(**1**). Since the trial court's PFA order was, in fact, based upon a finding of abuse as defined in 23 Pa.C.S.A. § 6102(a)(**2**) – and since Appellant makes no argument as to how the evidence was insufficient to support a finding of abuse under Section 6102(a)(2) – Appellant's claim on appeal cannot succeed. ***See***, ***e.g.***, ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. . . . This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived") (citations omitted).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/14/2025