J-A11018-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PAUL R. MAHLER AND SEAN O'SHEA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NANCY BALLARD, TRUSTEE, AND | : | No. 1124 MDA 2025 |
| WENDY KILBURN, TRUSTEE OF THE | : | |
| VEWW TRUST DATE JAN. 3, 2024 | : | |

Appeal from the Order Entered August 5, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2025-06788

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY NEUMAN, J.:          **FILED: JUNE 2, 2026**

Appellants, Paul R. Mahler and Sean O'Shea, appeal from the trial court's August 5, 2025 order denying their request for a preliminary injunction in this property dispute.  We affirm.

On June 11, 2025, Appellants filed a complaint against Appellees, Nancy Ballard, Trustee, and Wendy Kilburn, Trustee of the VEWW Trust date Jan. 3, 2024, asserting a claim for "easement by prescription & declaratory judg[]ment."  Complaint, 6/11/25, at 8 (unnecessary capitalization and emphasis omitted).  Therein, in relevant part, Appellants indicated the parties are all owners of property in the area surrounding Lake Nuangola in Luzerne County, Pennsylvania.  ***See id.*** at ¶¶ 1, 2, 4, 7.[1]  Appellants averred Lake

_____

[1] For ease of discussion, we refer to the property belonging to VEWW Trust as Appellees' property.

Nuangola is a lake community that includes a community path that circumnavigates most of the lakefront properties ("Lake Path"). *Id.* at ¶ 13. According to Appellants, the Lake Path traverses Appellees' property and Appellees "in the past couple years have placed barriers and items in the Lake Path area to make traversing their property difficult…." *Id.* at ¶¶ 8, 49. Appellants claimed they have a prescriptive easement to use the Lake Path over Appellees' property. *Id.* at ¶¶ 73-80.

On the same day Appellants filed their complaint, Appellants also filed a petition for preliminary and permanent injunction, in which they requested Appellees be preliminarily and permanently enjoined from blocking Appellants from using the Lake Path "for ingress, egress, and regress" until further order of court, and from requesting, participating in, or filing criminal trespass charges against Appellants for using the Lake Path to cross over Appellees' property. Petition, 6/11/25, at 6-7. Appellees subsequently filed an answer to the petition, in which they denied closing the alleged Lake Path to Appellants. Answer, 7/3/25, at ¶¶ 20, 33.

A hearing on Appellants' petition for preliminary injunction occurred on July 15, 2025. The hearing transcript reveals the following in pertinent part. Appellants first called Mr. Mahler to testify. Mr. Mahler stated he initially visited Lake Nuangola in the summer of 1960, resided there from about 1963 to 1970, moved away but continued to spend the summers there, and moved back full-time in July 2009. N.T., 7/15/25, at 9-12. Appellants introduced the following tax map, which Mr. Mahler had reviewed and marked:



Appellants' Exhibit A; **see also** N.T. at 14.[2]

---

[2] The record indicates a colored copy was introduced at the hearing; however, a colored copy is not contained in the certified or reproduced records. N.T. at 15-16.

Mr. Mahler indicated the dark line going around portions of the lake denotes the roughly mile-and-a-half-long Lake Path. ***See*** N.T. at 16, 18. In the bottom right corner of the map, Mr. Mahler said there is swamp that extends to around where the dark line denoting the Lake Path begins near Willow Grove Street. ***See id.*** at 15; ***see also id.*** at 22 (Mr. Mahler's explaining the Lake Path "ends just before the swamp area at Willow Grove"). On the right side of the map (which is the west side of the lake), Mr. Mahler marked Appellees' property with the indication "Ballard[,]" and his property as "Mahler." ***Id.*** at 15-16. Mr. Mahler testified there are several access points to the lakefront on the west side of the lake, including at Willow Grove Street, Rock Island Street, and Lake Street, as well as entry at a grassy easement. ***Id.*** at 18; ***see also id.*** at 15-16. At the top of the map is a boardwalk, which Mr. Mahler said connects the path from the west side to the east side of the lake. ***Id.*** at 16. On the east side, Mr. Mahler explained the Lake Path goes past an area known as Red Rock and ends in an area that is not shown on the lower left side of the map. ***Id.***

Mr. Mahler stated the Lake Path has been in existence since before he came to the lake in 1960, and is roughly three-to-five feet wide on average. ***Id.*** at 13, 19. When asked if the Lake Path is delineated in any way, Mr. Mahler answered, "There are some signs that say[, 'P]ath[,'] that are relatively recent. There's no actual delineation. It's kind of a natural thing along the lakefront. Everybody knows where it is, where it goes. It's pretty easy to follow. Some people … have … stone on the ground in some areas." ***Id.*** at

- 4 -

17. Mr. Mahler explained he has used the Lake Path "to walk along the lake and enjoy the lake, to view the lake. It's been used also to get to people['s] homes, people who live on the lake; and for events, a lake walk for instance that they had for a number of years…." *Id.* at 20.

Mr. Mahler, who was 85 years old at the time of the hearing, said he has been using the portion of the Lake Path that crosses over Appellees' property since 1960. *Id.* at 46, 57. However, Mr. Mahler stated Appellees have placed boulders and no trespassing signs on their property blocking the Lake Path. *See id.* at 45-47. Mr. Mahler explained he consequently had to stop using this portion of the Lake Path, indicating he has balance and mobility issues and cannot climb over the boulders. *See id.* at 47, 59. He recalled that Appellees initially obstructed the path about three years ago with different items like a pool ladder, a bicycle, and chains, which he could get around since the items were movable and he was more functional at that time. *Id.* at 58, 59. Mr. Mahler acknowledged Appellees' property could be bypassed by going up Rock Island Street, across Main Street, and then down Willow Grove Street to get back on the Lake Path. *Id.* at 59-60. Mr. Mahler said it was a hardship, though, for him to walk Rock Island Street and Willow Grove Street as they both have about a 30-degree incline. *Id.* at 60; *see also id.* (Mr. Mahler's explaining, "I get shortness of breath. I have to stop. I can't continue and I don't enjoy the walk anymore. So it is now a physical thing that just keeps me from going over there."). When asked how far it is to the end of the Lake Path from Appellees' property, Mr. Mahler indicated it was 150 feet. *Id.* at

61. He also indicated there were two more houses on the lakefront past Appellees' property going toward Willow Grove Street. *See id.* at 42, 47.

After Mr. Mahler testified, Ruth Slamon Borland — a part-time resident of Lake Nuangola — was called. *Id.* at 71. She stated children use the Lake Path to get to their friends' houses. *Id.*

Appellants then tried to call Greg Koons, who they said used to live on the west side of Lake Nuangola, and Terry Jones, who they claimed is the former owner of Water Street, an unopened way that crosses Appellees' property, to testify. *Id.* at 74-75, 77, 81. However, after hearing a description of what their testimony would be, the trial court indicated their testimony was unnecessary as it did not go to why an injunction is necessary to prevent immediate and irreparable harm. *See id.* at 74-92.

Subsequently, Appellants called Mr. O'Shea as a witness. He stated he has owned a property and lived on the west side of Lake Nuangola since 1986. *Id.* at 93-94. He stated his property is not lakefront, but the next street back. *Id.* at 94. When asked where his property is in relation to Appellees' property, Mr. O'Shea explained, "If you go down Rock Island Street to the lake and go west two properties, that's where [Appellees'] property is." *Id.* Mr. O'Shea stated his deed has an easement to use a portion of the lakefront, explaining he used to leave his kayaks and access the lakefront toward the end of the Lake Path on the west side. *See id.* at 94-95. To access his easement right, Mr. O'Shea said he typically walks down Rock Island Street and then along the Lake Path, crossing over Appellees' property. *Id.* at 95. Mr. O'Shea

conveyed he also uses the Lake Path to go for walks and for socializing. *Id.* at 95-96. However, Mr. O'Shea corroborated that the portion of the Lake Path crossing over Appellees' property has been obstructed. *Id.* at 96-97. Originally, Mr. O'Shea said "there was a pool ladder, sticks, branches, yard debris piled up. Being younger than [Mr.] Mahler, I could walk around it. And so I have walked across that property numerous times." *Id.* at 97. Currently, Mr. O'Shea said there are boulders blocking the Lake Path. *Id.*

Mr. O'Shea relayed he was cited by police for trespassing across Appellees' property about a week-and-a-half before the complaint was filed in this matter. *Id.* at 97-98, 128. Mr. O'Shea said he is now "reluctant" to use the Lake Path, explaining "it interrupts my morning walk because it does limit my access, and I no longer keep my boats down at the lakefront because of less access." *Id.* at 98. When asked if harm would be caused to him if he is denied access to the portion of the Lake Path that crosses over Appellees' property, Mr. O'Shea replied, "It causes inconvenience. I don't know the legal definition of harm, but it's inconvenient because … the shortest way to access my lakefront access is down the hill and across the path." *Id.* at 99. On cross-examination, Mr. O'Shea stated he was not aware of anyone else who was similarly charged with trespassing for walking through Appellees' property, and he denied Appellees' counsel's suggestion he was charged because he damaged Appellees' no trespassing signs. *See id.* at 105-07. When shown video Appellees recorded, Mr. O'Shea also agreed that people,

including himself, are able to walk around the boulders. ***See id.*** at 107-08.[3] He estimated the boulders have been there since 2023 when Appellees did construction along the lakefront. ***Id.*** at 104-05; ***see also id.*** at 105 (indicating the no trespassing signs have been there since 2022). Mr. O'Shea further admitted he could access his easement by taking a different route that did not require crossing Appellees' property. ***See id.*** at 113-18.

Finally, Appellants called Ms. Kilburn as a witness. She stated Mr. O'Shea was cited for criminal trespass because he was vandalizing her property, not because he passed through it. ***Id.*** at 131; ***see also id.*** (Ms. Kilburn's averring Mr. O'Shea stepped on and damaged her signs). She explained she put the no trespassing signs up because "there are liability issues. It's private property. It's our yard. It's our family area and I think that just says enough." ***Id.*** Further, she insisted the boulders came from a prior construction project, were used to create a landscaped area, and did not block people from walking across her property. ***Id.*** at 138; ***see also id.*** at 141 (suggesting the boulders have been there since 2022). Ms. Kilburn also conveyed there have been incidents where people who support the Lake Path have come on or near her property and harassed her, and that people have disturbed her signs and other items. ***Id.*** at 133, 139-40. In support, she played a video taken from cameras on her property. ***Id.*** at 140-45.

---

[3] The videos played at the hearing were not transmitted to us with the certified record.

At the conclusion of the hearing, the trial court denied Appellants' preliminary injunction petition, explaining:

> [Appellants] require irreparable harm and it has to be immediate. [Appellants'] own witness has testified the obstacles have been in the road since 2023, maybe 2022. Since construction they've walked around them, they've moved around them. They've said that there is no irreparable harm because they could still use the whole path up to 150 feet to the swamp. The irreparable harm that was claimed by Mr. O'Shea is clearly not there because his boats are at a very easily accessible place as demonstrated on cross-examination. So we don't even get beyond that immediate harm, there's none. This has been going on for years. It was filed after a trespass [charge] was filed against Mr. O'Shea. It wasn't filed at any time earlier. There was no immediacy to it. It's been going on for years by the testimony of record by [Appellants'] witnesses. And there is no blockage as [Appellants] averred. The boulders do not block the path. We watched numerous videos of people accessing that path repeatedly. They've been accessing it just up to most recently. [Appellants are] at no disadvantage. [Appellants are] at a status quo. There's a sign that says you're being video'd. You can be recorded. If they choose to go by it and there's a no trespass sign, that's on their own merits. But there's a video recording people coming and going. There's a video of someone walking on that path, picking up a sign, pulling it out of the ground[,] and about to throw it in the lake. Not [Appellants'] people, but others using this path that [Appellants'] witnesses have claimed is for good will and people walking and having a good time. So we'll get to the end run of if it is a legal, authorized path to go on and how we go forward, but for purposes of the preliminary injunction[,] there is no emergency. There is no immediate [*sic*]. There is no irreparable harm. Everybody can still walk the path. They choose to stop at their property? Fine. They can come down the next road and go on. I don't even know where they're coming from when they're walking across their property. They're going down to the paper road[, *i.e.*, Water Street]. They can go to the next road and just avoid it completely if they don't want to have any issues. And they're all being recorded, so anyone doing anything on the property is subject to that. And I'll issue an order stating it with the reasons established of record.

*Id.* at 151-53.

The trial court issued an order dated July 15, 2025, denying Appellants' preliminary injunction petition. On August 5, 2025, the trial court entered an order amending the July 15, 2025 order, in which it explained it had misidentified Appellees' counsel in its original order and fixed that mistake.[4] It stated all other terms of the July 15, 2025 order remain in effect.

Appellants filed a notice of appeal on August 13, 2025, purporting to appeal from the July 15, 2025 order.[5, 6] The trial court did not order Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. It later issued a Rule 1925(a) opinion, in which it referred to the reasoning it provided at the end of the hearing as the basis for its decision.

On appeal, Appellants present the following issues for our review:

1. Did the Common Pleas Court commit an error of law and/or abuse its discretion in its applying an incorrect higher standard of

_____

[4] The trial court's amended order was dated July 29, 2025, but Pa.R.Civ.P. 236(b) notice was not given until August 5, 2025. **See** Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)."); Pa.R.Civ.P. 236(b) (stating the prothonotary shall note in the docket the giving of written notice of an order).

[5] **See** Pa.R.A.P. 311(a)(4) (providing, subject to exceptions not applicable here, an order that denies an injunction is an interlocutory appeal as of right).

[6] We construe Appellant's notice of appeal as being taken from the trial court's amended August 5, 2025 order, instead of the July 15, 2025 order. We have changed the caption accordingly. **See Byoung Suk An v. Victoria Fire & Cas. Co.**, 113 A.3d 1283, 1286 (Pa. Super. 2015) ("Interests of judicial economy allow us to regard as done that which ought to have been done.") (cleaned up); Notice of Appeal, 8/13/25 (stating Appellants appeal from the July 15, 2025 order but attaching both the July 15, 2025 and August 5, 2025 orders to notice of appeal).

irreparable harm, where without a preliminary injunction, Mr. Mahler and Mr. O'Shea will be deprived of their prescriptive easement right to traverse the Lake Path over [Appellees'] [p]roperty that they enjoyed for more than 65 years for [Mr.] Mahler and 36 years for [Mr.] O'Shea which would require a reversal and remand to the lower court[?]

2. Did the Common Pleas Court commit an error of law and/or abuse its discretion in its application of the immediate requirement for a preliminary injunction by determining (i) that the criminal [t]respass charge initiated by [Appellees] against [Mr.] O'Shea two … weeks before the filing of the application did not create an immediate change in circumstance relating to Mr. O'Shea's and Mr. Mahler's right to walk the Lake Path without fear of criminal prosecution; and (ii) that [Mr.] Mahler's change in health as an 85[-]year[-]old man with A-Fib, a leaky microvalve, and bad knees that has led to dizziness and balance issues, did not create an immediate need to remove a single stone obstruction in the Lake Path, and requires a reversal and/or remand to the lower court?

3. Did the Common Pleas Court commit an error of law and/or abuse its discretion in denying [Mr.] Mahler and [Mr.] O'Shea to present witnesses that would provide evidence of all … the elements necessary for a preliminary injunction including those required to show a *prima facie* case of a prescriptive Lake Path easement?

4. Did the Common Pleas Court commit an error of law and/or abuse its discretion by not determining that Mr. Mahler and Mr. O'Shea met all … the elements required for a preliminary injunction which would require a reversal and/or remand to the lower court?

Appellants' Brief at 3-4 (italics added).

## First & Second Issue

*Immediate & Irreparable Harm*

We address Appellants' first and second issues together, as they both relate to the same preliminary injunction prerequisite.  At the outset, we recognize:

- 11 -

Appellate courts review an order granting or denying a preliminary injunction to determine whether the trial court abused its discretion. Pursuant to this standard of review, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. An appellate court will not interfere with the trial court's order unless it is clear that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied. At the preliminary injunction stage, appellate review is necessarily highly deferential as this Court has explained:

> It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

*CKHS, Inc. v. Prospect Med. Holdings, Inc.*, 329 A.3d 1204, 1211-12 (Pa. 2025) (cleaned up). Our scope of review in preliminary injunction matters is plenary. *Id.* at 1211 n.2.

"A preliminary injunction is a temporary remedy with the purpose to preserve the status quo as it exists or previously existed before the acts complained of, thereby preventing irreparable injury or gross injustice until the trial court can conduct further proceedings to resolve the underlying merits of the case." *Id.* at 1214-15 (cleaned up). Our Supreme Court has instructed:

> Apparently reasonable grounds exist to support a lower court's denial of injunctive relief where the lower court has properly found that any one of the six essential prerequisites for a preliminary injunction is not satisfied.
>
> The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2)

greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

**SEIU Healthcare Pa. v. Com.**, 104 A.3d 495, 501-02 (Pa. 2014) (cleaned up).

Here, Appellants first argue they have been irreparably harmed because their harm cannot be compensated by money damages and there is no adequate remedy at law. Appellants' Brief at 16, 18. They claim their harm "is a loss of the property right in the nature of easement rights that they are not able to enjoy and for which monetary damages would not adequately compensate." *Id.* at 19. Further, they say although the trial court "considered that Mr. Mahler and Mr. O'Shea would lose access to the last portion of the Lake Path and that they had an alternative route to get to the end, it belies the fact that the type of injury is not compensable by damages." *Id.* They state "Mr. Mahler is 85 years old and the denial to use and enjoy the Lake Path may be limited in the future to him [*sic*] due to his age[-]related health issues. Mr. O'Shea uses the Lake Path to access his other easement rights on Lake Nuangola." *Id.* at 20.

Second, Appellants argue a preliminary injunction is needed to prevent immediate harm. They assert once the criminal charge was filed against Mr. O'Shea, an immediate need arose "to determine the parties['] rights to walk

the Lake Path without fear of criminal charges being filed." *Id.* at 22-23. Moreover, they say Mr. Mahler "can no longer climb over the boulder and/or traverse around it … due to his balance issues." *Id.* at 23. They claim Mr. Mahler's change in health condition is "recent[,]" and "has created an immediacy to Mr. Mahler to have at least one of the stones moved to permit access. The movement of the stone would afford access and return the parties to the status quo prior to the placement of the stone." *Id.* at 23-24.

The record shows apparently reasonable grounds for the trial court's decision. "[A] party moving for a preliminary injunction has a threshold evidentiary requirement to show actual proof of irreparable harm." *CKHS, Inc.*, 329 A.3d at 1215 (cleaned up). "A harm is regarded as irreparable when it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard." *Id.* (cleaned up). Additionally, "[t]he harm must be immediate, *i.e.*, there must be a likelihood of an injury before a court can fully adjudicate the merits." *Anderson v. Brawand*, No. 950 WDA 2024, unpublished memorandum at 7 (Pa. Super. filed June 10, 2025) (citing *Panther Valley Television Co. v. Summit Hill*, 94 A.2d 735, 737 (Pa. 1953)).[7]

Here, the trial court found there was no immediate and irreparable harm to Appellants. With respect to irreparable harm, the trial court determined

---

[7] *See* Pa.R.A.P. 126(b) (providing unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

the boulders have been on the Lake Path since at least 2023, the boulders do not block the Lake Path, and people have been able to walk around the boulders to continue on the Lake Path. The trial court also noted there is only 150 feet from Appellees' property to the end of the Lake Path, and individuals are able to avoid Appellees' property entirely if they choose by using one of the abutting roads to bypass it. The trial court additionally considered that Mr. O'Shea conceded he could still access the area on the lakefront where he stored his belongings by taking a different, albeit less convenient, route. The record supports these findings.

Regarding immediacy, the trial court emphasized the boulders have been there for years. While not specifically discussed by the trial court, to the extent Appellants complain about the potential of facing criminal trespass charges for using the Lake Path to cross Appellees' property, the record indicates Ms. Kilburn did not pursue criminal charges against Mr. O'Shea because he walked across her property, but instead because she alleged he vandalized it. Additionally, as the trial court observed, the record shows people can avoid Appellees' property (and any potential issues) by using the abutting roads and still reach the end of the Lake Path.[8] Further, to the extent

_____

[8] Appellees also assert Mr. O'Shea may raise any defense — including a claim of prescriptive easement or lack of criminal intent — in his criminal proceedings. Appellees' Brief at 13-14. They further claim criminal proceedings can only be enjoined in rare cases and that Appellants' request to enjoin Appellees from requesting or filing future criminal charges amounts to a request for a prior restraint on speech. *Id.* at 14-16. Appellants did not

*(Footnote Continued Next Page)*

Appellants insist Mr. Mahler has only recently become unable to navigate around the boulders, suggesting an urgent need for a preliminary injunction to stop an imminent injury of lack of access, the record belies this claim. Mr. Mahler testified he stopped using the portion of the Lake Path on Appellees' property once the boulders appeared, which Mr. O'Shea estimated was in 2023. Thus, at the time of the hearing, the record supports Mr. Mahler had already not used the Lake Path over Appellees' property for years without seeking relief. Further, even if Mr. Mahler's health issues were as recent as he now argues, we agree "[t]he condition of the land has not changed; only Mr. Mahler's ability to navigate it has." Appellees' Brief at 11 n.1.

Accordingly, under our highly deferential standard of review, we discern no abuse of discretion by the trial court in determining an injunction was not necessary to prevent immediate and irreparable harm to Appellants. No relief is due on Appellants' first and second issues.

**Third Issue**

*Other Witnesses*

In Appellants' third issue, they argue the trial court erred and/or abused its discretion in not allowing Appellants to present witnesses to support the

---

file a reply brief addressing these arguments. **See** Comment to Pa.R.A.P. 2113 ("An appellant now has a general right to file a reply brief. The scope of the reply brief is limited, however, in that such brief may only address matters raised by [the] appellee and not previously addressed in [the] appellant's brief."); **see also Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citation omitted).

other preliminary injunction prerequisites. **_See_** Appellants' Brief at 24-25. Again, no relief is due. As previously discussed, where a trial court properly finds any one of the six essential prerequisites for a preliminary injunction is not satisfied, apparently reasonable grounds exist to support the trial court's denial of injunctive relief. **_See SEIU Healthcare Pa._**, 104 A.3d at 501. Here, we have already determined the trial court did not abuse its discretion in finding the prerequisite of immediate and irreparable harm was not met. As Appellants did not meet this threshold evidentiary requirement, **_see CKHS, Inc._**, 329 A.3d at 1215, the trial court did not err or abuse its discretion in not permitting Appellants to present witnesses to support the other prerequisites.

### Fourth Issue

*Remaining Prerequisites*

In Appellants' fourth and final issue, they argue they meet the remaining prerequisites for a preliminary injunction. **_See_** Appellants' Brief at 25-33. As we have already determined the trial court did not abuse its discretion in finding they did not meet the immediate and irreparable harm prerequisite, we need not address the remaining prerequisites. **_See SEIU Healthcare Pa._**, **_supra_**.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>06/02/2026</u>